IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HOWARD MAYFIELD,

                                                OPINION AND ORDER

                Plaintiff,

                                                20-cv-269-bbc

     v.

EMILY PEISSIG, FINK, FAIT, MERBACH,
KEVIN CARR and S. NOVAK,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff Howard Mayfield, who is incarcerated at the Columbia Correctional Institution, alleges that defendants violated his rights under the due process and equal protection clauses, the Eighth Amendment and state negligence law when they denied him previously-approved drug and work release programming and placed him in unsanitary conditions in a maximum security prison with greater restrictions than a work release center. Plaintiff's proposed complaint is before the court for screening under 28 U.S.C. § 1915A. Also before the court is plaintiff's motion for court assistance in recruiting counsel.  Dkt. #2.

      For the reasons explained below, I find that plaintiff's allegations fail to state a constitutional claim upon which relief may be granted.  Accordingly, I am dismissing this case and directing the clerk of court to record a strike in accordance with 28 U.S.C. § 1915(g).  Plaintiff's motion for court assistance in recruiting counsel will be denied as moot.

      Plaintiff alleges the following facts in his complaint.

1

ALLEGATIONS OF FACT

Plaintiff Howard Mayfield is currently incarcerated at the Columbia Correctional Institution, where most of the defendants are employed. S. Novak is the warden, Fink is a housing manager, Fait is an offender classification specialist, Peissig is a social worker and Merbach is a correctional classification manager. Defendant Kevin Carr is the Secretary of the Department of Corrections.

On September 16, 2019, plaintiff was classified as "minimum security" and approved for work release and a transfer to a work release center in Milwaukee, Wisconsin. Because there were no beds available at the work release center, plaintiff was transferred to Columbia, a maximum security prison, where he was scheduled to participate in "drug programming" until May 22, 2020. However, Columbia lacked resources to provide drug programming for plaintiff because of staff shortages and multiple lockdowns. On January 3, 2020, defendants Fait, Merbach, Fink and Peissig agreed to change plaintiff's drug program start date from February 10, 2020 to October 26, 2020. The delay effectively eliminates plaintiff's opportunity to transfer to a work release program because of the timing of his release date. (There is no work release program at Columbia.)

After plaintiff was transferred to Columbia on September 19, 2019, he was placed in a barracks housing unit that is fenced inside the prison but subject to the same rules. Plaintiff began having skin, scalp and fungal nail infections, which he attributes to being housed in close-quarters and a "filthy" environment. According to plaintiff the barracks is a "breeding ground" for various "infectious germs and diseases." The walls of the barracks

are covered in dirt, there are no filters in the air exchangers, the plumbing often backs up in the bathrooms, the kitchen and shower walls are covered in mildew, the shower drains are often clogged, bugs enter the building from outside and the mattresses and pillows are worn and cracked, making it easy for bedbugs to flourish.

OPINION

Plaintiff's claims can be grouped into two categories: (1) the delay in his placement in drug and work release programming and (2) the conditions of his confinement. I will address each category below. However, one initial matter merits attention.

Although plaintiff says that he is bringing a class action lawsuit, he is the only named plaintiff and he has not included any allegations in his complaint about the experiences of other prisoners. Even if plaintiff had made such allegations and other plaintiffs had signed the complaint, plaintiff could not represent them in this lawsuit, Nocula v. UGS Corp., 520 F.3d 719, 725 (7th Cir. 2015) (noting that one pro se litigant cannot represent another); Georgakis v. Illinois State University, 722 F.3d 1075, 1077 (7th Cir. 2013) ("A nonlawyer can't handle a case on behalf of anyone except himself."), or act as a class representative under Federal Rule of Civil Procedure 23(a). Howard v. Pollard, 814 F.3d 475, 478 (7th Cir. 2015) ("[I]t is generally not an abuse of discretion for a district court to deny a motion for class certification on the ground that a pro se litigant is not an adequate class representative.").

A.  Lack of Programming

Plaintiff alleges that defendants denied him his protected liberty interest in a work release program without due process.  However, in Meachum v. Fano, 427 U.S. 215 (1976), the United States Supreme Court held that the Constitution does not grant inmates a liberty or property interest in their classifications or prison assignments.  Relying on that holding, the Court of Appeals for the Seventh Circuit concluded that the opportunity to be assigned to a work camp or participate in a work release program does not create a liberty or property interest because a prisoner is not entitled to the benefit.  DeTomaso v. McGinnis, 970 F.2d 211, 212 (7th Cir. 1992) (citing Joihner v. McEvers, 898 F.2d 569 (7th Cir. 1990)).  See also DeWalt v. Carter, 224 F.3d 607, 613 (7th Cir. 2000) (prisoners have no liberty or property interest in their prison jobs).  The rules regarding the work release program, e.g., Wis. Admin. Code DOC § 324.05, make clear that prisoners are not entitled to participate in the work release program; they merely have the opportunity to participate pending approval by the relevant authority.  Grisle v. Jess, 2017 WL 3274214, at *3 (E.D. Wis. Aug. 1, 2017) (holding same).   Therefore, plaintiff's loss of drug programming and the opportunity to transfer to a work release center does not implicate a liberty interest for which plaintiff was entitled to procedural due process.

Plaintiff also alleges that he has an equal protection claim for being treated differently from other inmates approved for work release who are transferred to work release centers. Specifically, he alleges that inmates like him with drug program needs are discriminated against because they must first attend a drug program at a maximum security prison before

4

being transferred to a work release center. In circumstances like plaintiff's, where "disparate treatment is not based on a suspect class and does not affect a fundamental right, prison administrators may treat inmates differently as long as the unequal treatment is rationally related to a legitimate penological interest." Flynn v. Thatcher, 819 F.3d 990, 991 (7th Cir. 2016). Here, plaintiff alleges that all inmates with drug program needs are treated similarly but that inmates without drug program needs are treated better. Prison classifications are presumed to be rational and will be upheld if any justification for them can be conceived. Id. (citing Indiana Petroleum Marketers & Convenience Store Association v. Cook, 808 F.3d 318, 322 (7th Cir. 2015); Johnson v. Daley, 339 F.3d 582, 586 (7th Cir. 2003). Requiring inmates to undergo drug programming at a maximum security institution before being released into a less restrictive setting is presumably appropriate and related to a legitimate penological interest. Accordingly, plaintiff's allegations do not state a claim under either the due process or equal protection clause.

B. Conditions of Confinement

The Eighth Amendment requires prison officials to provide prisoners with "the minimal civilized nature of life's necessities," including sanitary conditions of confinement. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Gray v. Hardy, 826 F.3d 1000, 1005 (7th Cir. 2016); Gillis v. Litscher, 468 F.3d 488, 493 (7th Cir. 2006). Prison officials violate the constitution if they are "deliberately indifferent to adverse conditions that deny 'the minimal civilized nature of life's necessities.'" Farmer, 511 U.S. at 834. "[C]onditions of

5

confinement, even if not individually serious enough to work constitutional violations, may violate the Constitution in combination when they have 'a mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" Budd v. Motley, 711 F.3d 840, 842-43 (7th Cir. 2013) (citation omitted).  See also Thomas v. Illinois, 697 F.3d 612, 614-15 (7th Cir. 2012) (when assessing objective severity of unsanitary conditions, court must consider their nature and duration, as well as any resulting physical or psychological harm).

Plaintiff's allegations about clogged plumbing, the walls of the barracks being covered in dirt and mildew, no filters in the air exchangers and worn mattresses and pillows are not sufficient to suggest that he was deprived of the "minimal civilized nature of life's necessities."  Although plaintiff's living conditions may be uncomfortable or even harsh at times, inmates do not have a constitutional right to be free from all discomfort.  Hudson v. McMillan, 503 U.S. 1, 9 (1992) ("routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society'") (internal citation omitted); Estate of Simpson v. Gorbett, 863 F.3d 740, 745 (7th Cir. 2017) ("[C]onditions "may be uncomfortable, even harsh, without being inhumane.'").

Plaintiff alleges that he developed various skin infections after being transferred to Columbia and contends that the close quarters and general uncleanliness of the barracks expose him and other inmates to possible infection or disease.  However, his allegations are speculation and do not suggest that he or other inmates faced any significant health and safety risks that were attributable to the close quarters in the barracks.  Conner v. Schwenn,

6

No. 19-cv-921-bbc (W.D. Wis. Feb. 21, 2020) (finding same with respect to plaintiff's allegations of exposure to possible disease and infection). Although plaintiff alleges that he saw dirt and mildew on the walls, his allegations do not suggest that he was actually exposed to mildew in a way that could create a real and significant risk of harm. Inmates have a right to adequate ventilation, but to be unconstitutional, the ventilation must be so poor as to constitute punishment. Shelby County Jail Inmates v. Westlake, 798 F.2d 1085, 1087 (7th Cir.1986). Plaintiff's allegation that the air exchangers do not have filters does not suggest that he or other inmates faced a substantial risk of serious harm to their health. Similarly, plaintiff's general allegations about worn bedding, "bugs" entering from outside and the shower drains backing up suggest occasional inconveniences that do not singly or in combination amount to a constitutional violation. For example, plaintiff's allegations do not suggest that the showers were inoperable, he was denied access to shower facilities, he was not provided with clean bedding or the bugs he saw were so numerous to create a health-threatening infestation. E.g., Akindele v. Arce, 2017 WL 467683, at *4 (N.D. Ill. Feb. 3, 2017) ("Although the plumbing malfunction is unfortunate, no record evidence suggests that Akindele was unable to maintain basic personal hygiene despite the presence of a non-flushing toilet that was covered by a towel."); Mims v. Hardy, 2013 WL 2451149, at *9 (N.D. Ill. June 5, 2013) (summarizing cases) ("[S]hort-term breakdown of an inmate's in-cell plumbing where the inmate is otherwise provided with food, beverages, access to showers, and access to toilets, does not rise to the level of a constitutional violation."). Cf. Harris v. Fleming, 839 F.2d 1232, 1234–36 (7th Cir.1988) (keeping prisoner in "filthy,

roach-infested cell," without toilet paper for five days, soap and other toiletries for ten days, not sufficiently serious to state Eighth Amendment claim). Therefore, plaintiff has failed to state an Eighth Amendment conditions of confinement claim against any of the defendants.

## C. Recording of Strike

Because plaintiff's complaint fails to state any claim upon which relief may be granted, I will direct the clerk of court to record a strike against plaintiff under 28 U.S.C. § 1915(g). Turley v. Gaetz, 625 F.3d 1005, 1009 (7th Cir. 2010) (plaintiff incurs strike when entire action is dismissed as frivolous, malicious or for failure to state claim).

## ORDER

IT IS ORDERED that

1. This case is DISMISSED for plaintiff Howard Mayfield's failure to state a constitutional claim upon which relief may be granted. A strike shall be recorded in accordance with 28 U.S.C. § 1915(g).

2. Plaintiff's motion for court assistance in recruiting counsel, dkt. #2, is DENIED as moot.

3. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 2d day of June, 2020.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge